Wright, J.,
delivered the opinion of the Court.
The prisoner was convicted, and sentenced to three years’ confinement in the penitentiary of the State, for the offense of obtaining goods under false pretenses, and appeals for a new trial, to this Court. The facts constituting the offense, as shown in the bill of exceptions, are these:
On the 30th of April, 1860, the prisoner came to the store of A. J. Brown & Co., a firm of merchants, composed of said Brown, William White, and Samuel L. Colville, doing business in Warren county ; and stated to Brown, one of the firm, that William Martin had sent him to get some goods. Brown asked the prisoner if Martin had sent an order by him for the goods. The prisoner replied that he had not, but that Martin told him to get the goods, and it would be all right. The prisoner further stated that Martin would have sent a written order for the goods, but that he was in a hurry that morning, and had not time, as he was on his horse, going on the mountain, to see about his cattle. Upon these statements made by the prisoner, Brown let him have the goods, to-wit: Two shirts, one pair of pants, three yards of drilling, trimmings for the pants, and one carpet bag; altogether, of the value of $8.70; *335 then the property, and in the possession of, said firm: and which he delivered to the prisoner, and charged to William Martin, by the prisoner, upon the books of the firm.
Some time after the goods were sold, Brown informed Martin of the transaction, and he denied that he had ever authorized the prisoner, in any manner, to get the goods, or make the account, and stated that he would not pay for them $ and upon the trial, Martin proved that he never had authorized the prisoner to get the goods. He further proved that the prisoner had been working at his house, but had left on the night of the 17th of April, and witness did hot see anything’ more of him till about the second Saturday in May, after-wards, and knew nothing of his getting the goods from Brown, until Brown told him of it. The witness further stated, that while the prisoner was working for him, he came to town with him, and purchased from A. J. Brown & Co., some ten or twelve dollars’ worth of goods for the prisoner $ but never authorized him to buy anything for witness, unless it was that the prisoner got some liquor from William Meadows, by his directions, and which he paid for. After the witness heard that the prisoner had got the goods, he took him, upon a warrant for getting property under false pretenses, and had him carried before a Justice of the Peace, where the prisoner settled the matter, by giving his note, with security, to witness, and witness assumed the debt to A. J. Brown & Co,
This conviction, we think, is proper. The jury have not only found that the statements of the prisoner were false, and that he had no authority from Martin to *336 make them, or get the goods, but also that ho did not honestly believe he had any such authority, or right, and obtained the goods with the intent to defraud this firm. By the Code, sec. 4701, every person, who, by any false pretense, with intent to defraud another, obtains from any person any personal property, is guilty of a penitentiary offense. This is almost a transcript of the English Statute, (30 Geo. 2, ch. 24,) and of that in New York. In substance, they are the same. They all employ the general term of false pretense, and which has been considered, in England and New York, as extending to every case where a party has obtained goods by falsely representing himself to be in a situation in ■ which he was not, or by falsely representing any occurrence that had not happened, to which persons of ordinary caution might give credit: Young et ais. vs. The King, 3 Term Rep., 98; The People vs. Johnson, 12 Johns. Rep., 292-3. It is impossible, as we .think, to distinguish these cases, in principle, from the present one. Indeed, the case in Johnson, is almost identical in its facts. The ingredients of the offense are, obtaining the goods by false pretenses, and with an intent to defraud. In this case, the very natural and circumstantial statement made by the person when he applied for the goods — the reason given why he did not bring a written order, connected with the fact that this firm knew he had been doing work for Martin, and that before that time Martin had purchased goods for him — was well calculated to deceive and impose upon them. If the false pretense ■ created the credit, it has been considered, in England and New York, as bringing the case within the Statute: 12 Johns. Rep., 293. As was said by Lord *337 Kenyon, (3 Term Rep., 103,) the Statute creating this offense, describes it in terms extremely general. It seems difficult to draw the line, and to say to what cases it shall extend; and, therefore, we must see whether each particular case, as it arises, comes within it. That this does, we think there can be no doubt. It is distinguishable from Chapman vs. The State, 2 Head, 36. That was the case of a naked falsehood, not calculated, in itself, under the circumstances, to impose upon the prosecutor, and there was some reason to doubt whether it really did so.
The principle of the cases, seems to be, that whenever an exercise of common prudence and caution, on the part of him from whom the goods are obtained, would have enabled him to avoid being imposed upon by the pretense alleged, the case is not within the Statute; otherwise, it is: People vs. Williams, 4 Hill, 9-12; 3 Term Rep., 98; 12 Johns. Rep., 292; Coleman’s case, 2 East’s P. C., 672-3. But, as already stated, we cannot lay down a rule which shall apply to all cases which may arise under this Statute.
The judgment will be affirmed.